The **UNITED STATES** of America for the **Use and Benefit of LINCOLN ELECTRIC PRODUCTS CO., Inc., Plaintiff,**

v.

**GREENE ELECTRICAL SERVICE OF LONG ISLAND, INC., R. P. McTeague Construction Corp. and Fidelity and Deposit Company of Maryland, Defendants.**

**No. 65–C–512.**

United States District Court
E. D. New York.
March 15, 1966.

---

Daniel Tractenberg, New York City, for plaintiff.

Paltrow & Pudalov, Massapequa Park, Murray Pudalov, Massapequa Park, of counsel, for R. P. McTeague Const. Corp. and Fidelity & Deposit Co. of Maryland.

RAYFIEL, District Judge.

The use-plaintiff brought this action under the Miller Act, 40 U.S.C.A. § 270a et seq., (the Act) against R. P. McTeague Construction Corp., (McTeague) the prime contractor, Fidelity and Deposit Company of Maryland, (Fidelity) its surety, and Greene Electrical Service of Long Island, Inc., (Greene) the sub-contractor, to recover for electrical equipment furnished by the plaintiff to Greene for the project hereinafter referred to. Greene failed to answer the complaint.

McTeague entered into an agreement in writing with the United States of America under the terms of which it agreed to act as the general contractor in the construction of a project known as Westhampton Air Force Base, Automotive Maintenance Shop, Project #DA–30–075–Eng–11445. Pursuant to the Miller Act Fidelity, as surety, and McTeague, as principal, duly executed and delivered their bond to the United States to secure the payment by McTeague for all labor performed and/or material furnished by subcontractors incident to the prosecution of the work under the aforementioned agreement.

By written order McTeague engaged Greene to furnish certain labor and materials involved in the installation of the electrical equipment required under the aforementioned agreement. On or about April 29, 1964 the plaintiff and Greene entered into an agreement in writing pursuant to which the plaintiff, in consideration of the sum of $10,500, was to manufacture and deliver to the said project certain items of electrical equipment required to be supplied by Greene under its aforementioned agreement with McTeague. The plaintiff contends that it has duly performed the said agreement on its part but that Greene failed to make any payment thereunder, and there is now due and owing to it the sum of $10,596.

The plaintiff claims that the last delivery under its agreement was made on December 23, 1964, and that within 90 days thereafter it sent letters to Greene, McTeague and Fidelity by registered mail, informing them that it had fully performed its agreement with Greene but had received no payment thereunder, and demanding payment of the sum of $10,596.00 under the aforementioned bond.

McTeague claims (1) that the aforementioned notice was not given within 90 days, as required by the Act, and (2) that prior to the receipt of said notice it had paid Greene in full for all work which it had performed before it (Greene) abandoned work under its agreement. McTeague claims, further, that as a result of such abandonment it was obliged to engage others to complete the electrical work, and to purchase material necessary therefor, at a cost exceeding the balance unpaid under its agreement with Greene.

The pertinent provision of the Act follows:

"§ 270b. Same; rights of persons furnishing labor or material (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however*, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop (sic) addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."

At the trial the plaintiff produced both oral and documentary evidence to the effect that it had manufactured or fabricated, and delivered to Greene at the project site at Westhampton Air Base, all the electrical equipment and material which it was required to furnish under the written order of April 29, 1964; that the last item thereof, consisting of 9 panel boards and trim, was delivered on December 23, 1964; that the agreed price therefor, as stated in said order of April 29, 1964, was $10,500, no part of which has been paid, and that on March 23, 1965, in accordance with the provisions of Section 270b of the Act, it served notice on McTeague, Fidelity and Greene by registered mail, demanding payment of said sum of $10,500.

The defendants contend first that the March 23, 1965 notice did not comply with the Act. While admitting that the said notice was postmarked March 23, 1965, and was received by them, they claim that the notice was not timely since it was not *received* by Fidelity until March 23, 1965, the 91st day, and by McTeague on March 26, 1965.

■■   The Act provides that the required notice be given to the general contractor within 90 days after the date of the last delivery of material to the job site, which was on December 23, 1964.

The Act further provides that such notice shall be served by registered mail, postage prepaid. That was done. The last day for the *mailing* of such notice was March 23, 1965, the end of the 90th day following December 23, 1965. The time should be computed in accordance with Rule 6(a) of the Federal Rules of Civil Procedure which provides as follows:

"In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."

Applying said Rule to the instant case, the notice was timely. (See U. S. to the Use of Engineering and Equipment Co. v. Wyatt, D.C., 174 F.Supp. 260).

■ I disagree with the defendant's contention that the said notice must be *received* by the general contractor on the 90th day. As was stated by Judge Frank B. Ellis in the case of United States for the Use and Benefit of Crowe v. Continental Casualty Co., 245 F.Supp. 871, at 873,

"The contract analogy supports plaintiff's position since the 'notice by registered mail' requirement demonstrates an intent to consider the notice received by the contractor when registered and mailed. Further support for this conclusion comes from other statutory, though non-Miller Act, authorities.

"Where service of notice by registered mail is expressly authorized by statute, service is effected when the notice is properly addressed, registered, and mailed. [citations omitted]. 66 C.J.S. Notice § 18e(1), p. 664, n. 92.

"The notice having been effective when registered and mailed on the 90th day, plaintiff accomplished procedural compliance with the literal provisions of the Miller Act at that moment.

"In addition to providing for notice by registered mail, the Miller Act permits notice 'in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.' (40 U.S.C.A. § 270b(a)). These express methods both guarantee verification through an uninterested party of the date notice was dispatched, thereby precluding factual controversies on questions relating to date of sending and date of receipt. * * * This accords with the Supreme Court's direction to give the Miller Act 'a reasonable construction in order to effect its remedial purpose * * *.' Fleisher Engineering & Construction Co. v. United States, 311 U.S. 15, 18, 61 S.Ct. 81, 83 [85 L.Ed. 12] (1940)."

The defendants further contend that the plaintiff is estopped from asserting its claim under the Miller Act because of its bad faith and lack of due diligence in failing to inform McTeague that in September, 1964 a check in the sum of $3,000.00, issued to it by Greene, was dishonored by the bank on which it was drawn because of insufficient funds, and because the plaintiff, despite that fact, continued to perform its contract and make deliveries thereunder until December 23, 1964, without receiving payment therefor or notifying McTeague of such default.

■ The defendants cite the following cases to support that contention. United States to use of Marlin v. F. D. Rich Co., 199 F.Supp. 939, affirmed 308 F.2d 807; United States ex rel. Westinghouse Electric v. James Stewart Co., 336 F.2d 777; United States for use and benefit of Gulfport Piping Co. v. Monaco & Sons, Inc., 336 F.2d 636. Those cases are clearly distinguishable factually from the instant case. One involves a situation

in which the use plaintiff breached a *specific agreement* on its part to inform the general contractor of a default by the subcontractor in its obligation to the plaintiff. The others refer to a case wherein there was proof of *collusion* between the use plaintiff and the subcontractor to defraud the general contractor, and a case involving gross misrepresentation by the use plaintiff upon which the general contractor relied. It is true that there can be an estoppel *in pais* of a claim under the Act,—Moyer To Use of Trane Co. v. United States, 4 Cir., 206 F. 2d 57, 39 A.L.R.2d 1098—but not under the facts in the instant case.

■ The defendants make the further point that the plaintiff had no direct contractual relationship with Greene (Greene Electric Service of Long Island, Inc.) but, rather, with a sub-subcontractor, Greene Electric Service, and that its claim herein is therefore not protected by the Act. The short answer to that claim is that there was no proof whatsoever that there was any such separate and distinct entity as Greene Electric Service. There *was* testimony, however, that that name and Greene Electric Service of Long Island, Inc., were frequently used interchangeably in such documents as orders and receipts.

The defendants confuse the issue by making the further claim that the plaintiff had previously contracted to furnish the labor and materials to Kern Electric Co. Inc., (Kern) which had the original subcontract for electrical work, and, therefore, that Kern was a sub-subcontractor, and the plaintiff having merely furnished material for the project, would have no claim under the Act. The fact is that Kern never proceeded under its contract and Greene was engaged in its place and stead to perform the electrical work. Hence, this claim, too, is without basis in fact or law.

■ As their final point the defendants claim that at the time of Greene's abandonment of the work under its contract McTeague had paid it $31,000 of the contract price of $39,420, and that it was thereafter obliged to expend more than the remainder of the contract price for the labor and material necessary to complete the work provided for under Greene's contract. McTeague could, of course, have protected itself against what appears to have been improvident payments it made to Greene by requiring the latter to furnish a bond or other security against McTeague's liability to the plaintiff. See Mankin v. United States for the use of Ludowici-Celadon Company, 215 U.S. 533, 30 S.Ct. 174, 54 L.Ed. 315.

Based on the foregoing I find that the plaintiff fully performed its aforementioned agreement with Greene, the subcontractor herein; that Greene failed to pay it any part of the contract price of $10,500; that the last items of materials furnished by the plaintiff under the contract were delivered to the project site on December 23, 1964; that on March 23, 1965, and within the 90-day period prescribed by the Act, the plaintiff sent notices to McTeague and Fidelity by registered mail, informing them of the fact that Greene was indebted to it in the sum of $10,596, for labor and materials furnished to the project, and demanding payment thereof.

Accordingly, the plaintiff is entitled to judgment against McTeague, Fidelity and Greene in the sum of $10,500, (the amount stated in plaintiff's agreement with Greene) together with interest thereon from March 23, 1965, the date of said notice. See Triangle Electric Supply Co. Inc. v. Mojave Electric Co. et al., 238 F.Supp. 815; United States v. Seaboard Surety Company, 2 Cir., 339 F.2d 1.

The foregoing constitute the findings of fact and conclusions of law herein. The parties may within ten days from the date hereof propose additional findings not inconsistent herewith.