UNITED STATES of America, for the Use and Benefit of MATERIAL SERVICE DIVISION OF GENERAL DYNAMICS CORPORATION, Plaintiff-Appellant,

v.

The HOME INDEMNITY COMPANY et al., Defendants-Appellees.

No. 72–1435.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1973.

Decided Nov. 8, 1973.

Harry M. Coven, Howard M. Turner, Chicago, Ill., for plaintiff-appellant.

Jesse H. Brown, Chicago, Ill., Harry M. Brostoff, Oak Brook, Ill., for defendants-appellees.

Before HASTINGS and MURRAH *, Senior Circuit Judges, and PELL, Circuit Judge.

MURRAH, Senior Circuit Judge.

This is an appeal from an order dismissing a Miller Act claim [1] by a materialman against a general contractor and its statutory surety on the ground that the suit was not commenced within the prescribed one-year period. The Act requires the giving of written notice within 90 days and the commencement of the suit within one year of the date when the last materials were supplied. The statute is remedial and to be liberally construed, but the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action.[2]

---

* The Honorable Alfred P. Murrah, Senior Circuit Judge of the Tenth Circuit, is sitting by designation.

1. Under the circumstances of this case 40 U.S.C. § 270b authorizes a supplier to a subcontractor on a government project to sue the general contractor and his surety in federal court for materials furnished for which full payment has not been made.

2. United States v. General Insurance Company of America, 6 Cir., 339 F.2d 194 (1964). *See also* MacEvoy v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1943), and T. F. Scholes, Inc. v. United States, 10 Cir., 295 F.2d 366, 369 (1961).

The uncontroverted facts are that Pathman Construction Company, general contractor on a federal housing project at Fort Sheridan, Illinois, subcontracted the installation of gypsum wallboard for the project to Tri-State Drywall Corporation, and Tri-State contracted to purchase the wallboard from Material Service. Under the terms of the oral agreement, Material Service was to deliver the wallboard inside the buildings under construction. Most of the wallboard was carried by rail to the railroad siding at Fort Sheridan, unloaded there by a Material Service subcontractor, and by it delivered inside the buildings at the job site. If structures were not ready for delivery, the wallboard was stored temporarily near the railroad siding and delivered as needed.

In the fall of 1966 Tri-State abandoned the Fort Sheridan project, and its Pathman subcontract, without having fully paid Material Service for the wallboard delivered. This suit was commenced after extended but unsuccessful negotiations with Pathman over the unpaid balance.

The complaint specifically alleged that the materials were sold and delivered to Tri-State between March 25 and November 21, 1966, that written notice was given to the contractor within 90 days of the delivery of materials, as provided by § 270b(a), and that the suit was brought within one year. The contractor and the surety answered separately, admitting the demand but generally denying liability. Detailed interrogatories were propounded and answered, but unfortunately no definitive pretrial order emerged, and the case came on for trial on the issues framed by the complaint and general denials.

Apparently in support of the averments of its complaint, Material Service introduced copies of two registered letters to the contractor. The first letter, dated November 2, received November 3, transmitted an itemized statement as of September 30, 1966, "setting forth total drywall material deliveries to the subject project," and the amounts received, with a balance due of $46,445.94. The letter specifically stated that it was being transmitted in accordance with the requirements of the Miller Act. The second letter, dated the following December 8, transmitted an itemized statement as of November 30, 1966, listing undated invoices of "all dry-wall material delivered" by Material Service in the execution of its contract. The November 30 statement transmitted in the December 8 letter brought forward all of the invoices listed in the November 2 letter and only added an invoice for $2,359.29 for one carload of material not previously billed, leaving a new balance of $48,805.23. Suit was brought on November 13, 1967, a year and 11 days after the November 2 Miller Act notice, but within a year of the December 8 Miller Act notice transmitting the November 30 statement.

Treating the letters and the statements as the measure of the time of delivery of materials for purposes of the one-year statutory requirement, the trial court specifically found that the letter and statement of November 2 showed an unpaid balance for "materials previously delivered to the project," and that the last delivery of material was consequently prior to November 2, 1966—more than a year before suit was filed. Apparently referring to the December 8 letter, the court found that the added invoice (M–17489) was "an earlier invoice inadvertently omitted [and] later included," and that none of the listed invoices tended to show the delivery of any material subsequent to November 2. The court also referred to a certified statement of December 9, not formally introduced but read into evidence and relied upon by both parties. This statement lists all of the invoices contained in the December 8 letter and bears a notarized certification by the president of Tri-State that "the above listed invoices represent material delivered to the Pathman Job." As to this instrument, the trial court observed that "said Affidavit could only have been based on knowledge on or prior to October 28, 1966," the date on which the court found that Tri-

State abandoned the project, and that it therefore confirmed the correctness of the statements contained in the November 2 letter. The court thus found the proof insufficient to establish the one-year jurisdictional requirement of the Miller Act, and the case was consequently dismissed.

Material Service introduced but never relied on the November 2 letter as truly reflecting the delivery dates of the material set forth in the itemized statements. On trial the writer of the Miller Act letters did not deny the correctness of the statements included therein, but testified that he sent the November 2 letter under the mistaken impression that the materials were being delivered inside the buildings at the job site without delay, and that he did not know that "a substantial amount" of the materials were being stored at the track siding to be delivered later as needed. The record shows, however, that the December 8 letter was written after investigation and with knowledge of the true facts. Indeed, Material Service now relies ·on the statements contained in that letter, certified by the president of Tri-State on December 9, as a receipt or acknowledgment of materials supplied on that date. As a matter of fact, neither the letters nor any of the statements purport to show the actual delivery dates of any of the materials covered by the invoices listed therein. None of the listed invoices in any of the statements bear dates indicating delivery of material covered thereby. The most that can be said is that they constitute an acknowledgment by Material Service and the president of Tri-State that the materials covered in the statements were considered delivered prior to the dates of ·the statements. And, insomuch as the December 8 letter did not reflect the delivery of any material subsequent to November 2, the trial court found that the

last date of delivery was sometime prior to that date.

The essence of the contention on appeal is that we should now disregard the allegations of the complaint and the acknowledgment of delivery dates in both Miller Act letters and the billing dates set forth in the itemized statements, relied upon by Material Service at trial, and decide the lawsuit on a theory first asserted on appeal, to the effect that the last delivery was in March, 1967, and that by some legerdemain it relates back to the December 9 certified statement that the materials had been previously delivered.

■ Material Service is entitled to have its lawsuit considered and decided on the basis of its pleadings and proof. *See, e. g.,* Kansas City, St. L. & C. R. Co. v. Alton R. Co., 124 F.2d 780, 783 (7th Cir. 1941). *See also, e. g.,* Hillyer v. Pan American Petroleum Corporation, 348 F.2d 613, 615 (10th Cir. 1965). If the proof varies from the pleadings it is entitled to amend the pleadings to conform to the proof. *See* Fed.R.Civ.P. 15(b), and 3 Moore's Federal Practice ¶ 15.13 [2] (2d ed. 1972). The spirit and the design of the rules dictate that every suitor shall either prevail or fail on the justness of his cause, not the technical niceties of the pleadings. But the pleader is the architect and master of his own lawsuit and at some stage of the trial proceedings he must articulate the theory or theories upon which he expects to prevail. Although the rule is not absolute,[3] a litigant cannot ordinarily expect to lose in the trial court on one theory and win on appeal under another. *See, e. g.,* Granite City Steel Company v. Koppers Company, Inc., 419 F.2d 1289, 1290 (7th Cir. 1969).

■ There was, to be sure, proof showing that March, 1967, was the last

3. "There may always be exceptional cases or particular circumstances which will prompt a . reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). *See also* Wagner v. Retail Credit Co., 338 F.2d 598, 602 (7th Cir. 1964) ; Schenfeld v. Norton Company, 391 F.2d 420 (10th Cir. 1968) ; Hidden Splendor Mining Co. v. General Ins. Co. of America, 370 F.2d 515 (10th Cir. 1966).

delivery date.[4] But there is nothing in the record or briefs to indicate that Material Service ever sought to amend its complaint to rely upon that date as the last date of delivery for purposes of computing the one-year requirement. Indeed, on appeal Material Service invokes the March, 1967, delivery date only to repudiate the evidentiary effects of the letters and statements introduced by it at trial and to invoke a relation-back theory first asserted on appeal, apparently to satisfy both the 90-day notice and one-year filing period required for the suit. Regardless of the merits or motives for this manipulation of the facts and dates, we are certain that the underlying theory cannot be asserted for the first time on appeal.

    Material Service also seeks to invoke estoppel, but it was neither alleged nor invoked in the trial and is therefore unavailable here. *See* Fed.R.Civ.P. 15(b). Reviewing only the lawsuit that was tried and decided in the trial court, we affirm the judgment.

---

4. It is true that in the district court Material Service asserted that title did not pass until the wallboard was actually placed in the building and that this occurred in March of 1967. Nevertheless, after adverting to such delay Material Service in the district court declined to give the March, 1967, date determinative significance.