**UNITED STATES for the Use and Benefit of N.E.W. INTERSTATE CONCRETE, INC., and N.E.W. Interstate Concrete, Inc., Plaintiffs,**

v.

**EUI CORPORATION, the Austin Company, Seaboard Surety Company, Inc., and the United States Postal Service, Defendants.**

**No. TH 98–104–C–T/H.**

United States District Court,
S.D. Indiana,
Terre Haute Division.

March 28, 2000.

Craig M. McKee, Wilkinson Goeller Modesitt, Wilkinson & Drummy, Terre Haute, IN, for Plaintiffs.

Raymond M. Adler, Steers Sullivan, PC, Noblesville, IN, Sue Hendricks Bailey, Office of U.S. Attorney, Indianapolis, IN, Richard W. McMinn, Hoffman Drewry Hancock & Simmons, Indianapolis, IN, for Defendants.

## ENTRY DISCUSSING MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

TINDER, District Judge.

This matter comes before the court on the Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment filed by Defendants, Austin Company ("Austin") and Seaboard Surety Company, Inc. ("Seaboard"). Austin and Seaboard argue that Plaintiffs, United States for the Use and Benefit of N.E.W. Interstate Concrete, Inc., and N.E.W. Interstate Concrete, Inc. ("N.E.W."), failed to properly and/or timely comply with the notice requirements of the Miller Act, 40 U.S.C. §§ 270a-f. After considering the motion and the submissions of the parties, the court finds as follows.

### I. Background Facts

N.E.W. brings this suit to obtain payment for the labor and materials supplied in the construction of Defendant United States Postal Service's ("USPS") new Processing and Distribution Facility in Terre Haute, Indiana ("the project"). USPS hired Austin to be the general contractor of the project. As required by contract with the USPS and by the Miller Act, Austin provided a performance and payment bond on the project, issued by Seaboard, as surety. On September 25, 1996, Austin entered into a lump sum subcontract with Defendant EUI Corporation ("EUI"), to perform the concrete foundation work on the project. EUI then "sub-subcontracted" with N.E.W., a material

supplier. N.E.W. supplied concrete to EUI pursuant to purchase orders until June 23, 1997. (Compl.¶ 7.) EUI failed to pay N.E.W. $86,163.27 for concrete and services sold pursuant to purchase orders.

On September 12, 1997, N.E.W. filed a complaint against Austin and EUI for "Breach of Contract" and "Quasi–Contract/Unjust Enrichment/Quantum Meruit" (seeking judgment in the amount of $86,-163.27), in the Superior Court of Vigo County, Indiana, cause number 84D03–9709–CP–1662 ("state court complaint"). The state court complaint does not refer to the Miller Act or to Austin's payment bond. N.E.W.'s state court complaint was received by Austin's local agent for service of process, CT Corporation System ("CT Corporation"), on September 22, 1997. (Todman Aff. ¶ 11.) Austin received a copy of the state court complaint from CT Corporation on September 23, 1997. (*Id.*)

On May 12, 1998, N.E.W. filed this action. The Complaint in this action contains a "Claim on Performance Bond" pursuant to the Miller Act. It also contains virtually the same "Breach of Contract" and "Quasi–Contract/Unjust Enrichment/Quantum Meruit" claims as the state court complaint.

## II. Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment

Austin and Seaboard move for dismissal of the Complaint, or for summary judgment, contending that: (1) N.E.W.'s state court complaint did not constitute *proper* notice under the Miller Act; and, (2) even if the state court complaint did satisfy the Miller Act notice requirement, the notice was not *timely* given.

### A. Applicable Standard of Review

Austin and Seaboard present their motion as a "Motion to Dismiss, Or in the Alternative, Motion for Summary Judg-

ment." They include a statement of facts [1] and rely upon an affidavit with attached exhibits. N.E.W. responds by attaching its own affidavit. In light of the fact that the parties have treated this motion as one for summary judgment, the court will also treat it as one for summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A "material fact" is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *See id.; Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994).

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has supported the motion as provided by FED. R. CIV. P. 56(c), the party opposing the motion must come forward with evidence directed to specific facts showing that there is a genuine issue for trial. *See Duff v. Marathon Petroleum Co.*, 51 F.3d 741, 744 (7th Cir. 1995). When considering a motion for summary judgment, the court must view the facts, and all the inferences drawn from those facts, in the light most favorable to the nonmovant. *See Smith on Behalf of Smith v. Severn*, 129 F.3d 419,

---

1. The court notes that Austin and Seaboard's "Statment [sic] of Undisputed Material Facts" does not conform to the requirements of Southern District of Indiana Local Rule 56.1. Statements of "fact" numbers 20 through 67 consist of legal conclusions (complete with case and statutory citations) and factual arguments.

426 (7th Cir.1997); *Frey v. Fraser Yachts,* 29 F.3d 1153, 1156 (7th Cir.1994).

## B. Proper Notice

Austin and Seaboard move for dismissal of the Complaint, or for summary judgment, on the grounds that N.E.W.'s notice to Austin or Seaboard failed to comply with the requirements of the Miller Act.

The Miller Act requires that before the United States awards a contract exceeding $25,000 for the construction, alteration, or repair of any public building, the general contractor must furnish the government with two bonds. The general contractor first must furnish a performance bond sufficient to protect the interests of the United States. *See* 40 U.S.C. § 270a(a)(1). For the protection of subcontractors and those contracting with subcontractors, the general contractor must furnish a payment bond, either in the amount of 50% or 40% of the value of the job awarded. *See id.* § 270a(a)(2).[2] The Act provides a private right of action on the payment bond for those who furnished labor and materials to the project and who have not been paid for their work. *See id.* § 270b(a). The Act attaches certain conditions to this right, however. One condition is that if the person has dealt exclusively with the subcontractor and has had no direct contractual relationship with the prime contractor, he must give written notice of his claim to the prime contractor within ninety days from the date on which the subcontractor performed the last of the labor or furnished the last of the material for the project.[3] *See id.* "[T]he giving of notice and bringing of suit within the prescribed time[4] is a condition precedent to the right to maintain the action." *United States ex rel. Material Service Div. of General Dynamics Corp. v. Home Indem. Co.,* 489 F.2d 1004, 1005 (7th Cir.1973); *see also Fleisher Engineering & Const. Co. v. United States for Use and Benefit of Hallenbeck,* 311 U.S. 15, 17, 61 S.Ct. 81, 85 L.Ed. 12 (1940).

Austin and Seaboard argue that N.E.W. failed to give proper notice of its claim. N.E.W. counters by arguing that its state court complaint constituted sufficient notice.[5] In order to decide this issue, the court must determine precisely what is the required content of a Miller Act notice.

■ After analyzing the relevant portion of the Miller Act and the relevant case law, the court finds that a Miller Act notice must meet four requirements. The first three can be found directly in the language of the statute: (1) the notice must be in writing; (2) the notice must state "with substantial accuracy the amount claimed"; and, (3) the notice must state the name of the subcontractor who has not paid the sub-subcontractor or supplier giving the notice (i.e., the notice must state "the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed."). *See* 40 U.S.C. § 270b.[6]

---

**2.** For contracts over $5 million, the bond must be in the sum of $2.5 million. For contracts between $1 million and $5 million, the bond must be in the amount of 40% of the value of the contract. For contracts less than $1 million, the bond must be in the amount of 50% of the value of the contract.

**3.** The 90–day timing requirement is discussed in the next section of this Entry.

**4.** In addition to the 90–day notice requirement, the Miller Act requires an entity to sue within one year of the completion of its work.

**5.** N.E.W. also argues that the notice requirement was in some part satisfied because N.E.W.'s secretary-treasurer "had conversations with persons known to be representatives of The Austin Company and advised such representatives that N.E.W. had not been paid for labor and materials supplied to EUI Corporation pursuant to purchase orders for construction of the postal facility." (White Aff. ¶ 5.) Because of the court's resolution of N.E.W.'s argument that its state court complaint constituted sufficient Miller Act notice, the court declines to address this additional argument.

**6.** The statute provides in relevant part:

... [A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment

The majority of courts considering the issue have found that there is a fourth requirement of a Miller Act notice, one that is implicit in the statute: the notice must inform the general contractor (either expressly or by implication) that the sub-subcontractor or supplier is looking directly to the general contractor for payment. *See, e.g., United States for Use and Benefit of Kelly–Mohrhusen Co. v. Merle A. Patnode Co.,* 457 F.2d 116, 119 (7th Cir. 1972) ("[T]here exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor.") (quotation omitted); *Maccaferri Gabions, Inc. v. Dynateria Inc.,* 91 F.3d 1431, 1438 (11th Cir.1996) ("[Section] 270b(a) was meant to provide ... a clear indication from the materialman that it expects the general contractor to pay the balance due on the subcontractor's debt.") (citation omitted); *United States for Use and Benefit of Blue Circle West, Inc. v. Tucson Mechanical Contracting Inc.,* 921 F.2d 911, 914 (9th Cir.1990) (" '[W]ritten notice' under the Miller Act 'must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill.' "); *United States for Use and Benefit of Jinks Lumber Co. v. Federal Ins. Co.,* 452 F.2d 485, 487–88 (5th Cir.1971) ("The purpose of the notice requirement of the Miller Act is to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly.... While the provisions of the notice requirement should be construed liberally, it is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of amount due,

and that the claim specify the subcontractor allegedly in arrears.") (citations omitted); *United States for Use and Benefit of Charles R. Joyce & Son, Inc. v. F.A. Baehner, Inc.,* 326 F.2d 556, 558 (2nd Cir.1964) ("[T]he writing must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill.") (quotation and citations omitted); *cf. McWaters & Bartlett v. United States,* 272 F.2d 291, 295 (10th Cir.1959) (holding that it was not essential to an action by a supplier on a payment bond under the Miller Act that a demand be made on the general contractor for payment—although there was evidence in the case from which it could be found that the materialman looked to the general contractor for payment—since the statute does not require a demand for payment, but merely requires written notice of the claim).

■ In this case, the state court complaint fulfills each of the four requirements of a Miller Act notice—it is in writing; it states precisely the amount claimed ($86,163.27); it states the name of the defaulting subcontractor (EUI); and, since Austin is named as a defendant in the state court action (and judgment in the full amount claimed is demanded of it), it clearly informs Austin that N.E.W. is looking directly to Austin for payment.

Austin and Seaboard make a half-hearted attempt to argue that a Miller Act notice *must* mention the Miller Act and/or inform the general contractor that it is making a claim against the payment bond. However, they fail to point to a single case (and the court cannot find one) holding that such a requirement exists. Certainly, there are cases holding that when a sub-subcontractor or materialman informs the

bond shall have a right of action upon the said payment bond upon giving written notice to said contractor ... stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.
40 U.S.C. § 270b.

Because of the remedial nature of the Miller Act, some courts have relaxed these three requirements to varying degrees. However, these decisions are not relevant to this case since, as discussed below, there can be no reasonable dispute that each of the three express statutory requirements were met by the state court complaint.

general contractor that it is making a claim against the payment bond, this is sufficient notice under the Miller Act—but none of those cases indicate that mentioning the payment bond or the Miller Act is a minimum requirement. Further, there are numerous cases holding that the sub-subcontractor or materialman gave sufficient notice, despite the fact that the there is no mention in the courts' opinions that the notice referenced the payment bond or the Miller Act. *See, e.g., Patnode,* 457 F.2d at 117–19. The court finds, after reviewing the relevant caselaw, that for the purposes of the 90–day Miller Act notice, an unpaid sub-subcontractor or materialman need only demand payment from the general contractor of the subcontractor's debt—it need not specify under what legal theories it is demanding the payment (e.g., the Miller Act or state law theories), nor need it specify out of what source it seeks to be paid (e.g., from the payment bond or from the general contractor's own pocket).

But in this case, N.E.W.'s purported Miller Act notice did not simply fail to mention the payment bond and the Miller Act, it also brought legal claims against Austin under separate legal theories.[7] Austin and Seaboard argue that the state court complaint fails as a Miller Act notice because the state court complaint "can only be presumed to be what it is: an election by Plaintiff . . . to pursue its possible state remedies, rather than its federal." (Defs.' Reply Br. at 10.) In other words, Austin and Seaboard argue that the state court complaint duped them into thinking that N.E.W. would not make a Miller Act claim. Or, to put it yet another way, they argue that while an effective Miller Act notice need not specify under which legal theory (i.e., the Miller Act or some other theory) the sub-subcontractor or materialman is demanding payment of the unpaid bill, if the sub-subcontractor or

materialman does specify its theory, then the sub-subcontractor or materialman is forever bound by that choice.

In order to analyze this argument, the court looks to the purpose behind the Miller Act notice. The Miller Act notice requirement "permits the prime contractor, after waiting ninety days, safely to pay his subcontractors without fear of additional liability to sub-subcontractors or materialmen. The notice provision thus prevents both double payments by prime contractors and the alternative of interminable delay in settlements between contractors and subcontractors." *J.W. Bateson Co., Inc. v. United States ex rel. Board of Trustees,* 434 U.S. 586, 590 n. 4, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978) (quotations and citations omitted). In *United States for Use and Benefit of Blue Circle West, Inc. v. Tucson Mechanical Contracting Inc.,* 921 F.2d 911 (9th Cir.1990), the court stated:

> The purpose of the Miller Act notice requirement is to fix a time limit after which the prime contractor could make payment to the subcontractor with certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor. Prime contractors have an obligation to pay their subcontractors; subcontractors have an obligation to pay their suppliers from those funds. Under the Miller Act, prime contractors may also be held liable to the suppliers directly. To avoid such double liability, the Miller Act requires those suppliers looking to the prime contractor for payment to notify the contractor promptly, so that the contractor can withhold sufficient funds from the subcontractor.

*Id.* at 914 (citation and quotation omitted); *see also Maccaferri Gabions, Inc. v. Dynateria Inc.,* 91 F.3d 1431, 1438 (11th Cir.

---

**7.** Although, it is worth noting that there can be a recovery in quantum meruit—one of the legal theories named in the state court complaint—in Miller Act litigation. *See United States for Use and Benefit of Irvine v. Traylor Bros., Inc.,* 245 F.2d 678 (7th Cir.1957). This is not to imply, however, that the court has made any determination regarding whether such a theory is appropriate to the facts of this case.

1996) ("[Section] 270b(a) was meant to provide ... a clear indication from the materialman that it expects the general contractor to pay the balance due on the subcontractor's debt.") (citation omitted); *United States for Use and Benefit of Jinks Lumber Co. v. Federal Ins. Co.*, 452 F.2d 485, 487–88 (5th Cir.1971) ("The purpose of the notice requirement of the Miller Act is to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly. . . .").

■ In light of the above-stated purpose of the notice requirement, a practical test for the sufficiency of a purported Miller Act notice is whether, upon receipt of the purported notice from the sub-subcontractor or materialman, a reasonable general contractor would be prompted to withhold payment to the subcontractor. Austin and Seaboard argue that upon receipt of the state court complaint, a general contractor[8] would not withhold payment to the subcontractor because, in Austin's and Seaboard's opinions, the legal theories in the state court complaint do not have merit.[9] If the general contractor withheld payment to the subcontractor because of the state court complaint, Austin and Seaboard argue, the general contractor would be exposed to liability to the subcontractor for failing to pay.

The court disagrees with Austin's and Seaboard's arguments. Once a prudent general contractor received the state court complaint, it would be put on notice that it should not simply pay the defaulting subcontractor as if it were business as usual. The court sympathizes with the dilemma faced by a general contractor who hears demands from two separate places (in this case, from EUI and from N.E.W.) for the same money. But courts recognized this type of problem long ago and instituted the interpleader mechanism to protect such an entity from double liability.

A general contractor who receives the state court complaint (which is in a written form, and names the defaulting subcontractor and the unpaid amount) will have received the message that the unpaid materialman is looking directly to the general contractor for payment of its unpaid bill— and that is all the Miller Act requires in a notice. The court is hesitant to invent new, restrictive requirements for the content of a Miller Act notice (namely, that while the materialman need not specify under which legal theories it believes the general contractor is liable, if the materialman *does* specify *any* legal theories, it *must* mention the Miller Act) because the Miller Act "was intended to be highly remedial and should be construed liberally." *Fleisher Engineering & Const. Co. v. United States for Use and Benefit of Hallenbeck*, 311 U.S. 15, 17, 61 S.Ct. 81, 85 L.Ed. 12 (1940) (" 'Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute.' ") (quoting *Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206 (1917)). Referring to the Supreme Court's *Fleisher Engineering & Const.* opinion, the Seventh Circuit has stated: "We construe the references in the opinion to the 'condition precedent to the right to sue' to relate to timeliness of the notice, and *interpret the Court's emphasis on the remedial purposes of the Act as applicable to the content of the notice as well as the manner of its service.*" *United States for Use and*

---

**8.** While Austin makes clear that it did pay some money to EUI (Todman Aff. ¶ 10), Austin does not state whether it paid this money before or after Austin received the state court complaint. When making its argument, Austin speaks of its choice of whether to pay EUI after receipt of the state court complaint in hypothetical terms. (Defs.' Reply Br. at 11–12.)

**9.** The same legal claims in the state court complaint are also in the Complaint before this court. In this case, no potentially dispositive motion has been filed concerning these state-law claims, and they remain pending.

Benefit of Kelly–Mohrhusen Co. v. Merle A. Patnode Co., 457 F.2d 116, 118 (7th Cir.1972) (emphasis added); see also Pepper Burns Insulation, Inc. v. Artco Corp., 970 F.2d 1340, 1343 (4th Cir.1992); United States ex rel. Honeywell v. A & L Mechanical Contractors, 677 F.2d 383, 386 (4th Cir.1982); United States ex rel. John D. Ahern Co., Inc. v. J.F. White Contracting Co., 649 F.2d 29, 31 (1st Cir.1981).

The court concludes, therefore, that while hardly a model Miller Act notice, N.E.W.'s state court complaint adequately meets the content requirements of an effective Miller Act notice.

## C. Timely Notice

Austin and Seaboard also move for dismissal of the Complaint, or for summary judgment, contending that N.E.W.'s notice (i.e., the state court complaint) was not timely given, pursuant to the requirements of the Miller Act. Although "[t]he statute is remedial and to be liberally construed, ... the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action." United States for Use and Benefit of Material Service Div. of General Dynamics Corp. v. Home Indem. Co., 489 F.2d 1004, 1005 (7th Cir.1973). "The Act requires the giving of written notice within 90 days ... of the date when the last materials were supplied." Id.; see also United States for Use of American Builders & Contractors Supply Co., Inc. v. Bradley Const. Co., 960 F.Supp. 145, 147–48 (N.D.Ill.1997) ("[T]he ninety day notice requirement is a strict 'condition precedent.'") (citation omitted); cf. United States for Use and Benefit of B & R, Inc. v. Donald Lane Const., 19 F.Supp.2d 217 (D.Del.1998) (granting summary judgment for the general contractor because the general contractor did not receive the notice until the 92nd day, and thus the claim was untimely). The court construes Home

Indemnity and the other cited cases to stand for the proposition that the Miller Act's timing requirements should be strictly enforced.

In this case, the last day in which N.E.W. supplied concrete to EUI was June 23, 1997. N.E.W. filed the state court complaint on September 12, 1997. The state court complaint was received by Austin's local agent for service of process, CT Corporation, on September 22, 1997— 91 days after N.E.W. last supplied materials for the Terre Haute post office project. Austin received a copy of the state court complaint from CT Corporation the next day.

■ Austin and Seaboard argue that since CT Corporation received [10] the state court complaint 91 days after N.E.W. last supplied concrete for the project, the notice was untimely by one day. However, the 90th day after N.E.W.'s last delivery of concrete was Sunday, September 21, 1997. Federal Rule of Civil Procedure 6(a) provides in part that "[i]n computing any period of time prescribed ... by any applicable statute, ... the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." Therefore, if Rule 6(a) applies, the 90–day time limit would be tolled to September 22, 1997—the day the state court complaint was received by CT Corporation. Since Austin and Seaboard provide no reason why the Miller Act should not be considered an "applicable statute" pursuant to Rule 6(a), the court finds that Rule 6(a) is applicable in computing the limitation periods of § 270b (including the 90–day notice period). See Bailey v. Faux, 704 F.Supp. 1051, 1053–55 (D.Utah 1989) (relying on Rule 6(a) in holding that in calculating the Miller Act one-year time

10. Although the case law is not uniform on this point, the court will assume that the ninety-day time limit is calculated using the day on which the notice is received by the

general contractor, rather than the day on which the notice is mailed to the general contractor.

limitation for bringing suit, "[b]ecause the court was closed on November 26, 1987 in observance of Thanksgiving, however, the [one-year] period's end was tolled until November 27, 1987. Therefore, plaintiff's complaint filed on November 27, 1987 is timely."); *United States For Use of Greenwald–Supon, Inc. v. Gramercy Contractors, Inc.,* 433 F.Supp. 156, 163 n. 1 (S.D.N.Y.1977) ("The timeliness of notice under the Miller Act is computed in accordance with Rule 6, FED. R. CIV. P . . . .") (citing *U.S. to Use of Engineering & Equipment Co. v. Wyatt,* 174 F.Supp. 260, 261 (D.C.Fla.1959) ("Concluding then that Federal Rule of Civil Procedure 6(a) is applicable here to the Miller Act, and that the notice required under the Act was timely given . . . .")); *United States for Use of Altman v. Young Lumber Co.,* 376 F.Supp. 1290, 1295 (D.S.C.1974) ("Rule 6(a), *Federal Rules of Civil Procedure,* applies to the Miller Act limitation."); *United States for Use and Benefit of Lincoln Elec. Products Co. v. Greene Elec. Serv. of Long Island, Inc.,* 252 F.Supp. 324, 327 (E.D.N.Y.1966) ("The Miller Act 90–day notice time should be computed in accordance with Rule 6(a) of the Federal Rules of Civil Procedure . . . ."), *aff'd,* 379 F.2d 207 (2nd Cir.1967); *United States for Use and Benefit of Pre–Fab Erectors, Inc. v. A.B.C. Roofing & Siding, Inc.,* 193 F.Supp. 465, 465 (S.D.Cal.1961) (same). *But see United States for the use of Magna Masonry, Inc. v. R.T. Woodfield, Inc.,* 709 F.2d 249, 250 (4th Cir.1983) (holding, without explanation or citation, that Rule 6(a) does not apply to the Miller Act).

Finally, Austin and Seaboard argue that "[a]lthough service of CT Corporation Systems for *legal process* was authorized [by Austin], service by Plaintiff of its State Court Complaint as *notice of its claim* is questionable." (Defs.' Reply Br. at 15 (emphasis in original).) However, the Miller Act provides that the 90–day "notice shall be served . . . in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."

40 U.S.C. § 270b(a). The Marshal of the Southern District of Indiana is authorized to serve a summons to a local agent for service of process. *See* FED. R. CIV. P. 4(e). Therefore, once Austin's agent for service of process received the state court complaint (which also operated as a Miller Act notice), it was deemed to be received by Austin for the purposes of calculating timeliness under the Miller Act. The court concludes, therefore, that N.E.W. met the Miller Act's 90–day requirement.

### D. Conclusion

The delivery of N.E.W.'s state court complaint to CT Corporation constituted proper and timely notice to Austin under the Miller Act. Therefore, Austin and Seaboard's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment is **DENIED**.